Gabrielli, J.
On the evening of September 30, 1974 three masked bandits entered the home of Manuel Abate, threatened him and his children, and robbed him of a valuable old coin collection, a diamond ring, and an amount of cash. One of the three men wore a bandanna which, during the course of the robbery, slid down exposing his face. The evidence disclosed that during the three-minute period when Abate was emptying his safe, he had more than ample opportunity to view the robber, whom he later identified as Dwight Clark, the defendant.
Following a trial by jury the defendant was convicted of robbery in the first degree and he seeks a reversal on the ground that a taped telephone conversation was introduced into evidence in violation of his right to counsel and that the conversation was introduced without the notice required by CPL 710.30. He further asserts that the affirmative defense to robbery in the first degree, i.e., that the pistol was not a loaded weapon, is unconstitutional (Penal Law, § 160.15, subd 4). The Appellate Division upheld the conviction, and we affirm.
The three armed men entered Abate’s home in Nassau County at about 9:00 p.m. and demanded that he turn over his coin collection, valued at $40,000, or they would shoot his children. One of these men escorted Abate to his safe and pointed a revolver at his head and commanded him to open the safe, which he did. He testified that he did not know whether the pistol was real or toy but he felt it against his head and knew it was made of steel. Then, as directed, Abate put this 2,000-piece coin collection in a pillowcase and gave it to the robbers. During this time he had an opportunity to look at the defendant 10 or 12 times.
In October, Abate viewed a police lineup and identified the defendant as the man whose bandanna slid off during the robbery. Subsequently, defendant was indicted for robbery and *614 larceny in Nassau County and on December 13, 1974 he was arraigned with counsel present. In January, and while out on bail, the defendant left Nassau County and went to New York City where he attempted to sell the stolen coins. As cruel fate would have it, his first contact was not with the hoped-for "fence”, but rather with an undercover police officer, not involved in the Nassau County case, who was investigating the sale of stolen property in the city. Clark, thus unaware, met one Gervasi, an undercover officer of the New York City Police Department, and inquired whether he would be interested in any old coins which were currently in the possession of an associate. Gervasi’s partner, Sergeant Welsome, had accompanied him to the restaurant where the meeting took place but was not present during the discussions. After the brief conversation between Clark and Gervasi, the two police officers returned to headquarters where, later in the day, they received a telephone call regarding the coins from an unknown third person who was apparently the defendant’s associate. Eventually, this unknown person put the defendant on the telephone, and he indicated to Welsome that he had $20 gold pieces and also Mexican gold pieces for sale. While the officers attempted to connect tape recording equipment to the telephone, the defendant hung up. After making the necessary preparations, the officers returned the call and spoke again to the defendant concerning the coin collection. This second conversation was fully recorded on tape. Significantly, during this whole operation, neither of the officers had any knowledge whatsoever of the outstanding Nassau County indictment against Clark. Rather, they were independently investigating criminal activity in their own jurisdiction relating to the unlawful possession of stolen property. During the trial of the defendant the tape was introduced in evidence and played for the jury.
On this appeal the defendant claims that admission of his taped conversation with a police officer made after indictment and in the absence of counsel, violated his right to counsel as defined in Massiah v United States (377 US 201). In Massiah where investigating officers surreptitiously obtained incriminating statements from the defendant after his release on bail, the Supreme Court held that the defendant was denied the protections accorded by his right to counsel "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited *615 from him after he had been indicted and in the absence of his counsel” (supra, p 206). The rule is well entrenched' in New York that incriminating statements obtained from a defendant after a lawyer has entered the proceeding are inadmissible if procured by custodial interrogation in the absence of counsel or a waiver (People v Hobson, 39 NY2d 479; People v Paulin, 25 NY2d 445; People v Waterman 9 NY2d 561; People v Di Biasi, 7 NY2d 544). Indeed, this court has recently reaffirmed the safeguards extended by the right to counsel in holding that only in the presence of a lawyer may a defendant waive his right to counsel after a lawyer has entered the proceeding in connection with the charges under investigation (People v Hobson, supra); and the protections extended by this right cover investigations made by the Internal Affairs Division of the New York City Police Department in response to complaints by a defendant (People v Townes, 41 NY2d 97; People v Roberson, 41 NY2d 106).
But this rule is not an absolute. Representation by counsel in a proceeding unrelated to the investigation is insufficient to invoke the protections (People v Hetherington, 27 NY2d 242, 245; People v Taylor, 27 NY2d 327). And we have also held that a voluntary, spontaneous statement is outside the purview of the rule (People v Kaye, 25 NY2d 139). Nor, as in this case, does the presence of counsel immunize the defendant from normal, good faith, investigation which occurs after indictment and is unrelated thereto and directed toward other criminal activity (United States v Garcia, 377 F2d 321; United States v Edwards, 366 F2d 853, 872-873). Incriminating statements made to the police in a noncustodial separable setting are admissible despite the attachment of counsel if, as here, the statements are elicited in the course of a good faith police investigation.
The prohibition against custodial interrogation after a lawyer has entered the proceedings, absent the presence of counsel or a waiver, is aimed at protecting a defendant from deliberate effots by law enforcement officials to elicit incriminating statements in disregard of constitutional protections. However, where the police are engaged in no such deliberate attempt but are instead pursuing a good faith investigation, neither the need nor the purpose for the rule is furthered by its application. Thus, the taped telephone conversations were properly admitted into evidence.
The defendant asserts that the prosecution failed to give *616 notice of intent to use statements made to a public servant pursuant to CPL 710.30[1] (see People v Briggs, 38 NY2d 319). At the trial Sergeant Welsome was asked to relate the substance of his telephone conversations with the defendant; and defense counsel’s objection thereto on the ground that defendant’s conversations with the police officer were hearsay, was properly overruled. Welsome then testified to several incriminating statements made by the defendant. At this point the prosecutor indicated his intent to offer into evidence the tape recording of one of the telephone conversations and defense counsel objected to the introduction of the tape on the ground that it was made in the absence of counsel, as discussed above. The objection was overruled and a short recess was called in order to allow defense counsel an opportunity to review a transcript of the tape. When Officer Welsome was recalled to the stand after the recess, the introduction of the tape was challenged only on the ground that defendant was enticed into making such statements but the objection was properly overruled and the recorded conversation was then received in evidence. Prior to Officer Gervasi being called to testify about conversations with the defendant, defense counsel, for the first time, objected to any further testimony concerning defendant’s statements on the ground that the notice pursuant to CPL 710.30 had not been given. Importantly, this objection was subsequently abandoned. Accordingly, the claim that the prosecution failed to give adequate notice was not properly preserved for appellate review (People v Ross, 21 NY2d 258; see, also, People v Rullo, 31 NY2d 894).[2]
Finally, the defendant asserts that the affirmative defense to robbery in the first degree is unconstitutional. Subdivision 4 of section 160.15 of the Penal Law provides:
"A person is guilty of robbery in the first degree when he *617 forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
* * *
"4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.”
The defendant contends that this case is controlled by Mullaney v Wilbur (421 US 684), which held that the prosecution must prove beyond a reasonable doubt every element of an offense, and that placing on the defendant the burden of proving the affirmative defense that the act was committed in the heat óf passion violated due process. Initially we note that no exception was necessary to. preserve this issue for our review (People v Patterson, 39 NY2d 288). Going to the merits, however, the courts of this State have upheld this statute against constitutional challenge (People v Felder, 39 AD2d 373, affd 32 NY2d 747, app dsmd 414 US 948; People v McDonald, 50 AD2d 907, mot for lv to app den 39 NY2d 840; cf. People v Patterson, supra). We are here presented with insufficient reason to disturb these holdings.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. CPL 710.30 provides in pertinent part: "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20 * * * they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.”

. Upon arraignment, the prosecutor served upon defendant a printed notice stating that "the People intend to offer at the trial of this indictment evidence of oral and/or written statements made to a public servant pertaining to the charge set forth in this indictment”. We do not, and indeed need not, pass upon the adequacy of this particular notice. We are informed that additional information is now being supplied with the notice.