Julian J. **DONALD**, Petitioner-Appellant,

v.

Sheriff Clarence **JONES** of Dallas County, Texas, Respondent-Appellee.

No. 30389.

United States Court of Appeals, Fifth Circuit.

June 14, 1971.

Rehearing Denied July 22, 1971.

Hume Cofer, Cofer & Cofer, John D. Cofer, Austin, Tex., for petitioner-appellant. John E. Powers, Austin, Tex., of counsel.

Harry J. Schulz, Jr., Asst. Dist. Atty., Henry Wade, Crim. Dist. Atty., Dallas, Tex., for respondent-appellee.

Before SKELTON,\* Judge, and MORGAN and CLARK, Circuit Judges.

SKELTON, Judge:

This is an appeal from an order of the United States District Court for the Northern District of Texas denying habeas corpus relief and granting a certificate for probable cause. Petitioner, Julian J. Donald, filed a petition for habeas corpus on June 4, 1970, alleging, *inter alia,* that he was deprived of the right to a jury trial on the punishment part of a bifurcated trial, because of ex post facto application of Article 37.07 of the Texas Code of Criminal Procedure.

The root of the problem in this case stems from a change in Texas law with regard to the jury's assessing a defendant's punishment. At the time of the offense on August 12, 1965, Article 693 of the 1925 Texas Code of Criminal Procedure was in effect. It provided for a single, general verdict by which a jury determined both the defendant's guilt and punishment. However, a new Texas Code of Criminal Procedure became effective on January 1, 1966, and was thus operative at the time of petitioner's indictment and arraignment. Article 37.-07 [1] of this new Code established the bifurcated trial in Texas by which the defendant could elect between the judge and the jury as to whom he wanted to assess his punishment if found guilty. The defendant could wait until the conclusion of the first part of the trial and the return of a finding of guilty by the jury before he made this election. However, on August 28, 1967, after the indictment and arraignment of the petitioner, but prior to his trial, Article 37.-07, subd. 2(b) was amended, so as to require that the above-mentioned election be made "at the time he enters his plea in open court." [2] This provision

---

\* Honorable Byron Skelton, U. S. Court of Claims, Washington, D. C., sitting by designation as a member of this panel.

1. Article 37.07 subd. 2(b) states in pertinent part:
    (b) If a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense charged where the same is not absolutely fixed by law to some particular penalty except when the defendant, upon the return of a finding of guilty, requests that the punishment be assessed by the same jury. In the event the defendant elects to have the jury fix the punishment in cases where the punishment is fixed by law, the court shall instruct the jury that if they find the defendant is the same person who was convicted in the prior conviction or convictions alleged for enhancement, they should set his punishment as prescribed by law.

2. Article 37.07 subd. 2(b)
    (b) If a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in capital cases where the state has made it known in writing prior to trial that it will seek the death penalty, (2) in any criminal action where the jury may recommend probation and the defendant filed his sworn motion for probation before the trial began, and (3) in other cases where the defendant so elects in writing at the time he enters his plea in open court, the punishment shall be assessed by the same jury. If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment.

was in effect at the time of Donald's trial. Thus, the question arises as to what the term "plea in open court" means in relation to when the election is to be made. The facts leading up to appellant's petition are as follows.

Petitioner Donald was indicted on May 9, 1966, for felony theft by false pretext alleged to have been committed on August 12, 1965. The indictment also alleged a previous conviction of an offense of the same nature (obtaining money by false and fraudulent representations in New Mexico on February 24, 1957) under the Texas recidivist statute for the purpose of enhancement of punishment. The pre-trial hearing was held on September 26, 1966, at which time Donald was arraigned and pleaded not guilty. Prior to this, on September 23, 1966, petitioner filed his sworn application for probation, stating essentially that he had never been convicted of a felony except in New Mexico for which he had received a pardon. More than a year later on October 23, 1967, Donald's trial began. As stated, this was subsequent to the effective date of amended Article 37.07. After the jury was selected, Donald was arraigned again and he pleaded not guilty in open court. The first paragraph of the indictment was then read to the jury and the defendant again pleaded not guilty in open court. Then, on October 26, 1967, while the jury was deliberating on the guilt or innocence of the defendant, Donald filed his request that the jury assess his punishment in the event he be found guilty, which motion was overruled by the trial judge as being filed too late. Under the original Article 37.07, this request would have been timely, but under amended Article 37.07 which was in effect at the time of trial, the request had to be made when defendant entered his plea in open court. The jury returned its verdict of guilty and was discharged, because under Article 37.07, upon a finding of guilty by the jury, it is the judge's responsibility to assess punishment unless the defendant had theretofore timely requested

that the jury assess his punishment. The second paragraph of the indictment was then read alleging a prior felony conviction in New Mexico for a prior offense of the same nature, and, the trial judge, after hearing the evidence decided the issue of enhancement against the defendant and fixed his penalty at the maximum of ten years confinement in the penitentiary.

■ Petitioner Donald contends that the application of Article 37.07 as amended was ex post facto in nature because it deprived him of the opportunity to make his jury election and thus have a jury assess his punishment. This contention is based on the premise that "plea in open court" means at the time of arraignment and since the time of arraignment had passed when the new law became effective, defendant was denied an opportunity to make his election. However, we find, as did the United States District Judge, that Donald still had the opportunity to make an election, because we interpret "open court" as used in Article 37.07 subd. 2(b) (3) to connote the time the defendant makes his plea to the indictment before the jury in "open court." Also, it should be noted here that even if, as defendant contends, "open court" meant at the time of arraignment, he would still not have been denied the opportunity to elect to have the jury assess his punishment because he was arraigned again and made his plea in open court at the start of the trial which was *after* the amendment became effective.

■ Petitioner next argues that even if he were not deprived of the opportunity to make his jury election by the 1967 amendment to Article 37.07, the application of the amended statute nevertheless deprived him of a substantial right and material advantage available to him under the prior law. However, the prohibition of Article I, Section 10 of the United States Constitution toward ex post facto laws applies only to changes in substantive law. Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); Thompson v. Utah, 170 U.S.

343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898). A person has no vested right in any partial remedy or procedure and can not insist on the application to the trial of his case of any rules of procedure other than those existing at the time of trial. Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896). The legislature may prescribe at its discretion different modes of procedure or different remedies as long as they do not deprive the accused of a substantial right, such as changing the nature of the offense, or its constituent elements. Beazell v. Ohio, *supra;* Thompson v. Utah, *supra;* Duncan v. Missouri, 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894). We find that the 1967 amendment to Article 37.07 was a procedural change in the law that did not deprive the defendant of a substantial right. It did not take away the defendant's right to elect to have a jury assess his punishment, but merely changed the time at which the defendant could elect to exercise this still existing right.

■ Defendant cites two Georgia Supreme Court cases in support of his proposition that he was deprived of a substantial right, Camp v. State, 187 Ga. 76, 200 S.E. 126 (1938); Hurt v. State, 187 Ga. 73, 199 S.E. 801 (1938). However, in these two cases the defendants had the absolute right to have a jury assess their punishment under the indeterminate sentence law in effect when the criminal acts were committed. Before their trials, such law was amended so that only the judge could set punishment. The Georgia Supreme Court held that this was an ex post facto law as to these two defendants because it deprived them of a substantial pre-existing

right. But, these cases are distinguishable in that in the instant case, the right to have the jury assess punishment was not taken away. The time of election was merely changed and it is well established that a change in the mode of trial without a change in a substantial right is not vitiated as being an ex post facto law. Furthermore, the Georgia statute is different in that it was mandatory that the jury assess punishment. Here there is a choice. Defendant claims only two alleged advantages that he would be really deprived of under the new law: (1) hear the evidence and observe its appeal to the judge and jury, and (2) make the election after observing the jurors when they return a guilty verdict. We find these are not substantial advantages guaranteed to appellant by the U. S. Constitution. Thus, it was proper for the trial court to apply the change in the procedural law of Article 37.07 as amended in 1967 to Donald's case.

■ Petitioner also contends that he was entitled to a jury on punishment under 37.07, subd. 2(b) (2) [3] relating to probation. Such contention is without merit. Under Article 42.12, subd. B, § 3a of the Texas Code of Criminal Procedure,[4] a defendant must file a sworn motion for probation before trial, stating that he has never been convicted of a felony in this or any other state. This is one of the prerequisites for having the jury recommend probation. In other words, the defendant must make this sworn statement before the jury "may recommend probation" under Article 37.07, subd. 2(b)(2). Thus, the requirement of 42.12, subd. B, § 3a must be met before the provision of 37.07, subd. 2(b)

---

3. See footnote 2, *supra.*

4. Article 42.12 subd. B, § 3a states in pertinent part:

Sec. 3a. Where there is a conviction in any court of this State and the punishment assessed by the jury shall not exceed ten years, the jury may recommend probation upon written sworn motion made therefor by the defendant, filed before the trial begins. When the trial is to a jury, and the defendant has

no counsel, the court shall inform the defendant of his right to make such motion, and the court shall appoint counsel to prepare and present same, if desired by the defendant. In no case shall probation be recommended by the jury except when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony in this or any other State. * * *

can be invoked. Here the defendant Donald admitted in his sworn statement that he had been previously convicted of a felony in New Mexico. Thus, the requirements of Article 42.12 were not met, and for that reason, this never became a case where the jury could recommend probation under 37.07. Therefore, the trial judge was correct when he did not submit the issue of probation to the jury.

■ Furthermore, defendant claims his felony conviction should not be considered because he was granted a pardon for such felony conviction in New Mexico. However, the pardon does not vitiate the effect of defendant's felony conviction for the purpose of enhancement. Jones v. State, 141 Tex.Cr.R. 70, 147 S.W.2d 508 (1941), Logan v. State, 448 S.W.2d 462 (Tex.Cr.App.1969). The reason for this was stated in Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253. "A pardon for any other reason than subsequent proof of innocence does not obliterate the defendant's previous transgressions."

■ Defendant next contends that the records that the state introduced to prove his prior felony conviction were not properly exemplified as required by 28 U.S.C. 1738 (1964).[5] The United States District Judge correctly found that the introduction of evidence of a prior felony conviction in New Mexico deals with a rule of evidence of the State of Texas and thus does not present a Federal question under a Federal Writ of Habeas Corpus. Furthermore, 28 U.S.C. 1738 (1964) was enacted to implement the full, faith, and credit clause of the United States Constitution by providing a way of exemplifying the records of judicial proceedings held in one state so that such records would be admissible in later judicial proceedings held in another state. Thus, this statute merely means full, faith, and credit *must* be given if certain requirements are met. However, evidence of judicial proceedings may be admissible if less is shown than the statute requires when it conforms to the rules of evidence of the state where the trial is being held. Furthermore, any stringent rules as to what is required to prove a prior conviction or identity of the convicted person in another state is somewhat obviated by defendant's own admission that he was in fact previously convicted of a felony in that state. The judicial commitment order which ordered the appellant to be imprisoned in New Mexico for obtaining money by means of false and fraudulent representations and statements was exemplified by an attestation by the Acting Warden of the New Mexico Penitentiary that such documents were true and correct copies of the original records on file in his office, and also by a certificate of the Secretary of the State of New Mexico that such attestation by the Acting Warden was in proper order. This, coupled with defendant's admission, is sufficient evidence to support the enhancement finding.

■ Finally, defendant claims that he was deprived of a fair and impartial trial because the judge, Judge Bowie, who presided at his pretrial hearing was First Assistant District Attorney at the time of the offense in question. However, Judge Bowie had never heard of

---

5. 28 U.S.C. 1738 (1964) states in pertinent part:

\* \* \* \* \*

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records, and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

appellant prior to assuming the bench nor had he participated in the investigation of this case. In fact, defendant was not indicted on this offense until over eight months after Judge Bowie took the bench. Furthermore, Judge Bowie did not sit at the actual trial of this case. Under these circumstances petitioner was not deprived of a fair trial. Muro v. State, 387 S.W.2d 674 (Tex.Cr.App.1965). In fact, defendant did not insist on this point at oral argument.

Because of the above reasons, we conclude that the District Court correctly denied petitioner's application for writ of habeas corpus and its judgment should be and the same is hereby

Affirmed.

Clark, Circuit Judge, concurred in part and dissented in part, and filed opinion.